GEORGE J. NEWTON, Plaintiff, *v.* CHARLES D. MILLARD et al., Defendants.

Supreme Court, Westchester Special Term, February, 1922.

Contracts — mother as executrix unable to account to her son for his share of his father's estate — action by son on his mother's agreement to leave her entire estate to him sustained — pleadings — amendment to conform to proofs.

The will of testator who died in 1875 devised and bequeathed the remainder of his estate jointly to his widow and his son with provision that the son should receive the income from one-half of the estate until he became twenty-five years of age, at which time he was to receive one-half of the principal of the estate. In addition to the personal estate, inventoried at $15,112.54, testator left certain real estate which was sold by the widow as sole surviving executrix for $6,000.   On the same day in the year 1883 that said executrix conveyed the real estate the grantee conveyed the premises to the second husband of the executrix, the consideration stated in both deeds being $6,000.   On the same day the husband gave a mortgage to the executrix for $5,000 which upon a sale of the premises three years later was discharged and canceled of record together with two other mortgages upon the property given by the grantee of said executrix.   The son became twenty-five years of age shortly before March, 1892,

up to which time he had been paid no part of the principal of the estate nor had the executrix made an accounting. In March, 1892, the surrogate, to whom the facts with reference to said conveyance and mortgage were known, upon petition of the son to compel his mother to account as executrix of his father's estate, insisted that she make a judicial accounting and pay over to the petitioner his share of the estate. After discussion an agreement was reached that the executrix, who stated that she could not account, would leave all she had to the son, her only child, and with that understanding he executed a release and consent to the entry of a decree discharging her from all liability to him, and such a decree was accordingly entered. The executrix died in 1919 leaving an estate very much less than her son's share in his father's estate, the residuum of which she left to her son. *Held*, that the contract of the mother to leave her entire estate to her son having been proven by that clear and convincing evidence that the law requires and it appearing that all that he had received of the principal of his father's estate was the sum of $1,900, he was entitled to all of the estate of which his mother died seized and possessed, subject to the payment of her debts and funeral expenses.

Where facts alleged, so far as material, are substantially the same as proven upon the trial, the complaint should be regarded as amended to conform to the proofs although the prayer for relief differs from the form of judgment asked.

Action to recover property which was part of an estate.

*Folger & Rockwood*, for plaintiff.

*Ogren & Severy*, for defendants, Eugenia Swenson, individually and as executrix, and others.

*William C. Duell*, for Charles D. Millard, executor.

Tompkins, J. The plaintiff was the son of George J. Newton and Emma S. Newton. The father died in 1875, leaving a last will and testament by which he gave his household furniture to his widow, and with the exception of two small bequests, gave the balance of his estate, both real and personal, jointly to his son, the plaintiff in this action, and his widow, who afterwards became Emma S. Paine. The will provided that the plaintiff should receive and have the benefit of the income from one-half of the estate until he became twenty-five years of age, at which time he was to receive one-half of the principal thereof. The will was probated in Fulton county and the inventory showed personal property of the value of $15,112.54. In addition to the personal property, the testator left real estate in the village of Gloversville, which his widow, acting as sole surviving executrix, afterwards sold for the sum of $6,000.

The plaintiff reached the age of twenty-five years shortly prior to March, 1892, up to which time no accounting had been made by the executors, nor had any part of the principal of said estate been paid or turned over to the plaintiff, and at that time the plaintiff's mother, who was then Emma S. Paine, was the sole surviving executrix.

In the month of March, 1892, the plaintiff and his mother, then Emma S. Paine and sole surviving executrix, appeared before Judge

Keck, surrogate of Fulton county, and talked with the surrogate with reference to an accounting by the executrix, and the payment to the plaintiff of his share of his father's estate. Prior to that time, and in the year 1883, the executrix had conveyed the real estate of which her husband George J. Newton died seized to one Clarence S. Davison of Tarrytown, N. Y., where the executrix then resided with her husband, and the said Davison had on the same day conveyed said premises to John A. Paine, the husband of the executrix, the consideration stated in both deeds being the sum of $6,000. On the same day said Paine gave a mortgage on said premises to the said executrix for the sum of $5,000, which mortgage in 1886, when said premises were sold by said John A. Paine, was discharged and canceled of record, together with two other mortgages, one for $1,600 and one for $500, placed on the property by said John A. Paine.

These conveyances and mortgages were matters of record in the Fulton county clerk's office on the day that the plaintiff and his mother, the sole surviving executrix, appeared in the Surrogate's Court of Fulton county, and the facts with reference thereto were known by Judge Keck. When the plaintiff and his mother, the executrix, appeared before Judge Keck on the 29th day of March, 1892, the plaintiff asked for an accounting by his mother, and for his share of his father's estate. The surrogate made clear to the executrix her duty to make a final judicial accounting and to pay over to her son his share of the estate, and it was conceded by her that no accounting had been made and she stated that she could not make an accounting. The surrogate insisted that she must, and warned her of the consequences of her conduct, and advised the plaintiff to employ an attorney to secure his share of the estate. The executrix claimed she had made some expenditures for her son which he disputed.

After a discussion of the matter by the plaintiff, his mother and Judge Keck, the mother and son withdrew to an anteroom, and after an absence of considerable time, returned to Judge Keck's chambers, whereupon the executrix informed him that they had reached an agreement for a settlement of the whole matter; that the plaintiff was her only child, and that all she had would go to him upon her death, and that her son (the plaintiff) with that understanding would release her as executrix of his father's estate. Judge Keck then asked the plaintiff whether such an arrangement was satisfactory to him and the plaintiff replied in the affirmative, saying that he would rather settle it that way than have any trouble, and thereupon Judge Keck prepared a short form of receipt or release, and consent that a decree be made releasing and

discharging the executrix, which receipt or release was then, in the presence of Judge Keck, executed by the plaintiff, and at the same time the said executrix made a short form petition for the settlement of her accounts, and thereupon a decree was made by Surrogate Keck, settling the same and discharging the executrix from further liability.

Thereafter the executrix, Emma S. Paine, continued to reside at Tarrytown with her husband, John A. Paine, as long as he lived, and died in that village on September 6, 1919.

During her lifetime she paid the plaintiff on account of his share of his father's estate only the sum of $1,900, and that is all that he has received of the principal of said estate.

By her last will and testament, Mrs. Paine bequeathed $1,000 each to the defendants Fannie Wicks and Isabella Aitchison, and $6,000, together with her clothing, to the defendant Eugenia Swenson, and the residuum she left to the plaintiff. The value of the entire estate is shown to be something over $10,000, and less than $20,000, and very much less than the plaintiff's share of his father's estate with interest added.

The facts as I have stated them are not in dispute. There is no claim that plaintiff received more than $1,900 of the principal of his father's estate. Judge Keck testified on the trial of this case to the occurrences in his office in March, 1892, and to the demand made upon his mother by the plaintiff, and her failure to pay or turn over to plaintiff his share of the estate, and her failure to account as executrix thereof and her statement that she could not account and the advice and warning given her by the surrogate, and his advice to the plaintiff to get a lawyer and force his mother to make an accounting, followed by a private interview between the mother and son, the result of which they immediately communicated to the surrogate, whereupon he prepared, and the plaintiff executed and delivered to the executrix a receipt, release and consent, that she be discharged from further liability as executrix, and upon that, and on the same day, a decree was made by the surrogate releasing and discharging the executrix from further liability as such. The consideration for the receipt, release and consent executed by the plaintiff and the surrender of his right to be then invested with his share of the estate, was his mother's promise that she would leave to him her entire estate upon her death.

The testimony of Judge Keck was clear, unequivocal and very convincing. He testified that he had a very clear recollection of the transaction, and all that was said and done, and when asked by defendant's counsel how, after such a long lapse of time he could remember so distinctly all the details of the occurrence of the 29th of March, 1892, he replied in substance that the unusual character

of the occurrence made a strong and deep impression upon his mind. There can be no question of the truth of Judge Keck's testimony, and no doubt but that Mrs. Paine, in consideration of her son's relinquishment of his right to an immediate accounting, and the payment to him of one-half of the principal of his father's estate, agreed with the plaintiff in Judge Keck's presence to give to him her entire estate upon her death.

The circumstances and probabilities of the case all tend to corroborate Judge Keck and support the plaintiff's claim. The undisputed facts, that the plaintiff received only $1,900 of the more than $10,000 to which he was entitled; the failure of the executrix to make any account to the Surrogate's Court; her appearance with the plaintiff in the Surrogate's Court soon after be became twenty-five years of age; her inability to make a proper accounting at that time; the making of a decree on that day by the surrogate releasing and discharging her as executrix without any account whatever being filed, and based entirely upon the plaintiff's written consent; that plaintiff on that day did not receive the part of his father's estate to which he was entitled, and never thereafter during his mother's lifetime took any legal proceeding to make her account or pay over his share of the estate — these and other circumstances combine to support the plaintiff's claim and to establish the contract which he claims his mother made, to leave her entire estate to him. That such a contract was made has been proven by that clear and convincing evidence that the law requires in a case of this character.

Judge Keck's testimony was not based upon inferences or conjecture as suggested in defendant's brief, but was an intelligent narrative of things he heard and saw, and in which he had an immediate part, and it stands uncontradicted.

My conclusion is that the plaintiff is entitled to the entire estate of which his mother died seized and possessed, subject to the payment of her just debts and funeral expenses. The defendants claim that plaintiff cannot recover upon the theory on which the case was tried and submitted, because it is not in harmony with the allegations of the complaint and the prayer for relief. The facts alleged, so far as they are material, are substantially the same as proven upon the trial, although the prayer for relief in the complaint differs from the form of judgment asked for upon the trial and in the plaintiff's brief. I think in equity the complaint should be regarded as amended to conform to the evidence and the relief to which the plaintiff is entitled under the proofs.

Ordered accordingly.